UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| QUICK RUN PETROLEUM, LLC<br>Plaintiff<br><br>vs.<br><br>MENDON ROAD LEASING CORP.;<br>HEMISPHERE MANAGEMENT CORPORATION;<br>DEMETRIOS HASEOTES<br>Defendants | CIVIL ACTION NO.: 06-104 S<br><br>PLAINTIFF'S MOTION TO REMAND TO STATE COURT<br><br>(Providence Superior Court No.: 06-0524) |

PLAINTIFF'S MOTION TO REMAND TO STATE COURT

NOW COMES the plaintiff, Quick Run Petroleum, LLC., who, by and through its attorney, files this Motion to Remand and moves the honorable United States District Court for the District of Rhode Island for and order of remand pursuant to 28 U.S.C. § 1441 (a)-(d) and 28 U.S.C. §§ 1367, 1446, 1447.

The following are brief summaries of the Plaintiff's arguments herein:

1. There is no "real" federal court jurisdiction, where the defendants fail to state the same in their Petition for Removal and merely state that there is "apparent" jurisdiction, and, hence, jurisdiction is doubtful.

2. There is no diversity jurisdiction.

3. On the face of the complaint, there is no showing of any federal jurisdiction or federal claim under the well-pleaded complaint rule.

4. There is no franchise. There is merely a sublease under a master lease, where the plaintiff is a subtenant and the defendant (s) is/are (a) sublandlord (s).

5. The Petroleum Marketing Practice Act statute only confers upon the plaintiff the right to bring an original action before this court.

6. The defendants, as authors of the subject "Sublease Agreement," have stated that the law of Rhode Island is to apply to the Sublease Agreement, and they are bound by their choice of law.

There is further support for this motion in the attached memorandum.

Plaintiff requests oral argument.

Plaintiff's Supporting Memorandum is filed contemporaneously herewith.

WHEREFORE, plaintiff moves that its motion be GRANTED and that it be awarded costs and counsel fees in this matter.

DATED: This 14th day of March, 2006.

*Edward John Mulligan*, #0143
1220 Pontiac Avenue, Suite 303
Cranston, Rhode Island 02920
Tel: (4010944-5820 Fax 944-5823
e-mail; ejmull@cox.net

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| QUICK RUN PETROLEUM, LLC<br>Plaintiff<br><br>vs.<br><br>MENDON ROAD LEASING CORP.;<br>HEMISPHERE MANAGEMENT CORPORATION;<br>DEMETRIOS HASEOTES<br>Defendants | CIVIL ACTION NO.: 06-104 S<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND TO STATE COURT<br><br>(Providence Superior Court No.: 06-0524) |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S

MOTION TO REMAND TO STATE COURT

NOW COMES the plaintiff, Quick Run Petroleum, LLC., who, by and through its attorney, files this Memorandum in Support of its Motion to Remand and its moving that this honorable United States District Court for the District of Rhode Island for an order of remand pursuant to 28 U.S.C. § 1441 (a)-(d) and 28 U.S.C. §§ 1367, 1446, 1447.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On March 3, 2006, the above entitled action was removed to the United States District Court for the District of Rhode Island, by all of the above defendants. Defendants are all represented by the same counsel. See Defendants' Petition to Remove, March 6, 2006 (alleging *apparent* jurisdiction under §2805 of the Petroleum Marketing Practices Act [PMPA], 15 U.S.C.A. Ch. 55, §2805).

The subject action was filed by this plaintiff with the Providence Superior Court on January 26, 2006, Civil Action No.: PC 06-0524, and, thereafter, service of process[1] was duly made.

The factual introduction of the Complaint, for the purposes of this motion, shows that Plaintiff is a Rhode Island Limited Liability Company, located in Cumberland, Rhode Island and that defendant, Mendon Road Leasing Corp. ("Mendon"), is a Rhode Island Corporation. The remaining defendants, Hemisphere Management Corporation ("Hemisphere") and Demetrios Haseotes ("Haseotes") are citizens of New York. (Hence, there can be no viable diversity claim.)

In July of 2002, the plaintiff, as a sub-lessee or sub-tenant, entered into a Sublease Agreement[2] with Mendon, a sub-lessor and/or a sub-landlord of the subject Cumberland Rhode Island premises, which is a convenience store with gasoline and other services.

Later, on November 30, 2005, defendants wrongfully ousted plaintiff of the subject premises along with the cash and inventory therein.

The Complaint, which arises out of Rhode Island law, is posited on three counts:

Count I (Breach of Contract);

Count II (Damages for Self Help); and

Count III (Conversion).

Nowhere in the complaint does the plaintiff assert or allude to any federal claim or federal statute in support of its complaint. The complaint is based entirely upon Rhode Island law concerning a Rhode Island business and undertaking.

---

[1] The records of service should reveal that Mendon Road Leasing Corp was served on February 21, 2006 and that the Hemisphere Management and Demetrios Hasseotes were served by certified mail, return receipt requested, on February 16, 2006.

[2] A copy of the lease is part of the defendants'Counterclaim and forwarded papers from the Superior Court.

## II STANDARDS APPLICABLE TO REMOVAL

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed, to the district court of the United States . . . ."Where, as in the instant premises, there is no diversity of citizenship, the district court has original jurisdiction only if the case "arises under federal law." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987).

When a plaintiff challenges the defendants' removal, the burden is on the defendants to establish the existence of federal jurisdiction pursuant to 28 U.S.C. § 1441. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936) (imposing upon the defendant the burden of justification for the removal) and *BIW Deceived v. Local S6*, 132 F. 3rd 824, 831 (1st Cir. 1997).

Here, there is not complete diversity, since one of the defendants, Mendon, is a citizen of Rhode Island; hence, the defendants must also meet the burden of establishing that this is a case that "arises under federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 481 U.S. 58, 63 (1987).

Further, any doubts as to legal right of removal are construed in favor of remand. *See Danca v. Private Health Care Sys. Inc.*, 185 F.3rd 1, 4 ( 1st Cir. 1999).

It is to be noted, that in their opening gambit, the defendants, themselves, express doubt as to their legal right of removal, where they set forth in their Petition for Removal, in ¶ 2, "The said Complaint *appears* to allege a civil cause of action under §2805 of the Petroleum Marketing Practices Act ['PMPA"] . . . ."[3] Where, as in the instant premises,

---

[3] As will be seen, for the reasons set forth *infra*, the defendants' claim of proper jurisdiction with this court in more that doubtful, it is without sufficient basis.

the movant has doubt to its right of removal, that equivocation would perforce trigger a presumption of remand to the originating state court under *Danca, supra.*

Where there is a claim of PMPA preemption, any such claim of preemption, in this Circuit, should be construed under a restrictive lens analysis. *See Esso Standard Oil Co. v. Department of Consumer Affairs,* 793 F.2nd 431 (1st Cir. 1986). The First Circuit's restrictive view is the majority view, followed by the First Circuit, along with the Second, Third, Sixth, Ninth and Eleventh Circuits, which holds that the PMPA preempts only those state laws that purport to regulate the grounds for, procedures for, and notification requirements of terminations of franchises and non-renewals of franchise agreements. *See Esso Standard Oil Co. v. Department of Consumer Affairs,* 793 F.2nd 431 (1st Cir. 1986); *Bellmore v. Mobil Oil Corp.*, 783 F 2nd 300, 304 (2nd Cir.1986); *O'Shea v. Amoco Oil*, 886 F.3rd 584 (3rd Cir.1988); *Consumers Petroleum Co. v. Texaco, Inc.*, 8004 F.2d 907 (6th 1986); *Pride v. Exxon Corp.*, 911 F.2nd 251, 257-58 (9th Cir. 1990) and *Seckler v. Star Enterprise*, 124 F.3rd 1339 (11th Cir.1997).

In order to find federal law jurisdiction *vel non*, under a removal, the court looks to the complaint itself, " 'under the well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.' *Id*

Thus, under the well-pleaded complaint rubric, the court looks to the four corners of a plaintiff's complaint, at the time of removal, to determine whether plaintiff has relief upon federal law sufficient to confer the federal court with jurisdiction under 28 U.S.C.

§1331 for "all claims arising under the Constitution, law or treaties of the United States" language. *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987).

Clearly, the plaintiff, being the author of the complaint, chooses the causes of action and legally decides to keep or not keep the matter in the state court. *See, also Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for So. Cal.* 463 U.S. 1, 10 (1983) and *Caterpillar*, 482 U.S. at 392. Likewise, "a defense, [as] it does not appear on the face of a well-pleaded complaint . . . therefore, does not authorize removal to the federal court." *Metropolitan Life Ins. Co. v. General Motors Corp.*, 481 U.S. 58, 63 (1987).

## III PLAINTIFF'S ARGUMENT IN SUPPORT OF REMAND

Looking at the four corners of the complaint, under the well-pleaded doctrine rule, nowhere does the plaintiff asseverate that this is a cause of action arising out of PMPA. Plaintiff simply shows, in its well-pleaded complaint, that its three causes of action are based only on Rhode Island state law and that it intends to rely on Rhode Island law.

In its First Count, for "Breach of Contract," the plaintiff claims to have suffered economic damages as a result of the defendants depriving it of its premises possession and assets therewith. In support of its possessory rights, the plaintiff incorporates the July lease, where it is a subtenant and/or sublessee (and not a franchisee). In the Complaint there is no mention, whatsoever, of any right under PMPA or that PMPA has been violated or is in play. Nor is there any assertion of its being a franchisee or that there exists a franchise. Plaintiff is merely a "sub-tenant," under a "Sublease Agreement." A copy of the "Sublease Agreement" is attached to the defendants' Answer and Counter-claim, as Exhibit A. The sublease asserts that Mendon is a nominee of a

non-party to this action, 99A Management Corp, and references a "master lease" by and between Tonetti Enterprises, also a non-party to this action, as the "master landlord" and said Tonetti Enterprises, as the "Sublandlord." See page 1, ¶¶ 1 though 4 of Exhibit A.

Nowhere in the sublease is there mention of any franchise. Additionally, there is no mention of any Petroleum "logo" or "trademark," to create a breath of a franchise claim. Indeed, there is no specific petroleum company in the sublease.

The purpose of the sublease, as stated in Section 5, at page 3 of Exhibit A, is for the "use (of) the premises only as a convenience store with gasoline, including lottery, money order sales and Western Union services, and for no other purpose without the prior written consent of the Sublandlord."

Therefore, the sublease does not fall under PMPA where "a franchised dealer in effect invests in the franchisor's trademark and as a result creates good will for the franchisor which the latter might on occasion be tempted to appropriate by terminating the franchise. (citations omitted). To prevent such opportunistic behavior the Act limits the franchisor's right to terminate its franchises." *Draeger Oil Co. Inc. v. Uno-Ven Co.*, 314 F3rd 299 (7th Cir.2002).

In its <u>Second Count</u>, for "Self Help," the plaintiff essentially states that the defendants have violated the self-help statute. By no stretch of the imagination, does that create a PMPA claim.

In its <u>Third Count</u>, for "Conversion," the plaintiff assets that the defendants have converted its property, again, clearly, the third count is entirely a state claim.

Indeed, assuming *arguendo*, that the plaintiff *could have* pleaded PMPA, the fact remains that plaintiff has not pleaded PMPA in any shape or fashion.

Defendants' reliance on PMPA, in the first instance is, therefore, without merit. Hypothecating that the plaintiff could be construed in the instant claims to be a franchisor, such construction does not construct any benefit to the defendants. Indeed, since the statute is in derogation of the common law, it "should be not be interpreted to reach beyond its original language and purpose." *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 940 F.2d 744, 750 (1st Cir. 1991). *See, also, Seahorse Marine Supplies Inc. v. Puerto Rico Sun*, 295 F.3rd 68 (1st Cir. 2002)

In *C.K.Smith & Co. v. Motiva Enterprises*, 269 F.3rd 70, 72 (1st Cir. 2001), the First Circuit stated that the purpose of PMPA was enacted by Congress to "protect franchisees [not franchisors] by leveling the playing field between them and their franchisors (typically, large oil companies). See Four Corners Serv. Station, Inc. v. Mobil Oil Co., 51 F.3rd 306, 310 91st Cir. 1995); Veracka Oil Co., 655 F.2d 445, 448 (1st Cir.1981)."

In *Veracka*, then Judge Bryer wrote: "The legislative history of the Marketing Act shows that its basic effort to prevent franchise termination reflects a recognition of the disparity of bargaining power between the franchisor and franchisee and an effort to prevent coercive or unfair franchisor practice." 655 F.2d at 448.

In short, the statute is only for the benefit of the franchisee to seek relief, if he desires, in the federal court. It is not a statute which gives or confers upon a franchisor the right to seek relief, under a PMPA umbrella to the federal court. *See, also, Beachler v. Amoco Oil Co.*, 112 F.3rd 902. 903-4 (7th Cir. 1997), which re echoes, *C.K. Smith, supra,* that the PMPA was enacted because Congress "[r]ecogniz[ed] the vast disparity between franchisors and franchisees in the petroleum industry. And that "[t]he legislative

history makes plain that Congress primarily was seeking 'to protect 'franchisees from arbitrary or discriminatory termination or non-renewal'" of a petroleum franchise. To allow a franchisor to seek succor under the Act, which is for the benefit of the franchisee against the overwhelming power of the franchisor calls to mind the passage in Carroll's Through the Looking-Glass, Ch. 4 [The Walrus and the Carpenter, st. 17], when after consuming all of the naive and trusting oysters, the Walrus asserts: " 'I weep for you,' * * * 'I deeply sympathize' With sobs and tears he sorted out those of the largest size.''

A plain reading of the statute itself makes it patent that the statute is for the protection of the franchisee not the franchisor. And, the enforcement provision of the statute is quite clear in this regard, as it provides:

> § Enforcement provisions
>
> (a) Maintenance of civil action by *franchisee* against franchisor, jurisdiction and venue time for commencement of action.
> If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the *franchisee* may maintain a civil action against the franchisor. Such action *may be brought*, without regard to the amount in controversy, in the district court of the United States . . . within a year . . . . (Emphasis supplied.)
> (b) Equitable relief by court . . . .
> * * *
> (2) . . . the court shall a preliminary injunction if
> (A) the *franchisee shows* . . . . (Emphasis supplied.)

The Fourth circuit, in the case of *Interstate Petroleum Corp., v. Morgan*, 249 F.3rd 215, 217 (4th Cir. 2001), has made it abundantly clear that the right to bring a PMPA preemption resides only with the franchisee and not the franchisor

In *Interstate Petroleum Corp.*, the Morgans, d/b/a Green Acres Gas and Grocery, entered into a franchise agreement with Interstate Petroleum. In the instant premises, there is no franchise. There is no original lease. There is no franchisor-franchise

agreement. The plaintiff is down the document chain as a subtenant or, at best some sort of a beneficiary of a lease.

In *Morgan,* the franchise provided that the Morgans, as franchisees, were to sell British Petroleum Gas (BP) under BP's logo and they were to obtain a letter of credit. The Morgans were unable to obtain the required letter of credit and were notified that the franchise would be terminated. In order to "revive" the franchise, the Morgans were given another chance to keep the franchise by agreeing to a termination of the franchise in the event they failed to meet the monthly payments in satisfaction of the earlier note or failed to deliver a letter of credit by the following month. (Here, there is no stated gas company logo or trademark.)

The Morgans were unable to meet the "second chance" letter of credit. Interstate, as the franchisor, filed suit under a federal claim and also under PMPA in federal court, on January 11, 1995. The same day, the Morgans filed suit in the state court based on contract law and seeking injunctive relief. Later the Morgans dismissed the state case.

Next, the Morgans filed a Rule 12 motion to dismiss claiming the district court lacked jurisdiction because PMPA did not allow a franchisor to bring an action against the franchisee. That motion was denied. Interstate claimed that there was "implicit" jurisdiction under PMPA because the Act implicitly authorizes the franchisor to maintain the same cause of action . . . against a franchisee. That jurisdictional proposition was accepted by the Morgans, and the case then went on to trial, resulting in a verdict for Interstate.

The Morgans next filed post trial motions and asserted no jurisdiction under PMPA, required for the plaintiff. The motion was denied. After the verdict was upheld,

the Morgans appealed and again asserted no jurisdiction under PMPA for the plaintiff-franchisor, notwithstanding their agreement to the contrary in the lower court.

The Fourth circuit rejected that claim of jurisdiction by the franchisor and said in *Coyne & Delany v. Blue Cross & Blue Shield, Inc.,* 102 F.3rd 712, 714 (4th Cir. 1996) that the grant of jurisdiction to one party does not imply jurisdiction to other parties. Therefore, "conferring jurisdiction in terms of franchise under S 2805 (a) does not implicitly confer jurisdiction on a franchisor." (Here, there is no claim of any federal jurisdiction by plaintiff whatsoever.)

Furthermore, as to any claimed agreement by the parties to jurisdiction, the court in *Interstate* said that under *American Fire & Cas. Co. v. Finn*, 341 U.S.6, 18 (1951), which controls, "an agreement by the parties that a court has jurisdiction is not binding on a court or a party in connection with these questions. *Id.* at 217.

The *Morgan* court, in "examining the pleadings under the well pleaded complaint doctrine of *Franchise Tax Board*, 463 U.S., at 13, to examine if Interstate's right to relief depended on resolution of substantial questions of law, with the exception of Interstate asserting in its' Complaint that this court has jurisdiction "pursuant to 28 U.S.C. S 1331 and the Petroleum Marketing Practices Act, 15 U.S.C. S 2801, et seq.," held that the mere passing reference of jurisdiction was not enough. For, nowhere else in the Complaint was mention of PMPA made by Interstate. (In the instant premises, it should be noted, there is no mention of PMPA at all.) "A fair reading of the complaint states nothing more than a complaint for breach of contract and injunctive relief." Therefore, the court was "of opinion that the complaint states nothing more than a complaint for breach of contract under state law." See generally 249 F 3rd at 17, 18.

Withal, the court thereupon held that, "the PMPA did note create Interstate's cause of action . . . ."

Even if Interstate intended to rely on the PMPA as a defense . . . the well-pleaded complaint rule, of course, precludes finding 'arising under' jurisdiction on such grounds. *See Gully v. First National Bank*, 299 U.S.109, 112-14 (1936) (discussing well-pleaded complaint rule and explaining that jurisdiction will not be found in anticipated defense.)

The *Interstate* verdict was vacated with instructions that the case be dismissed for lack of jurisdiction.

Here, unlike Interstate, there is no agreement or acknowledgement whatsoever as to federal jurisdiction. Indeed, this plaintiff steadfastly counters that there is no PMPA jurisdiction sought by it, plaintiff clearly does not seek any PMPA injunction protection, and does not contend PMPA implicated, at all, in this state claim.

The statute is patently only for the protection of a franchisee, who is not on a level footing with a franchisor. PMPA was clearly and only enacted for the benefit of the franchisee, and this was explicated by the First Circuit in its overview of PMPA, in *C.K. Smith & Co., v. Motiva Enterprises,* 269 F.3rd 70, 72 (1st Cir. 2001).

In *C.K. Smith & Co.,* the First Circuit said: "the PMPA establishes minimum standards to prevent arbitrary or discriminatory discontinuance of franchise agreements" (by the franchisors) because "Congress enacted this statute primarily to protect motor fuel franchisees by leveling the playing field between them and their franchisors (typically, large oil companies)."

Here, the defendants seek to stand the statute on its head and dishevel the playing field to their advantage, by claiming that the statute confers jurisdiction on the franchisor,

as well. Such a position is without merit, and it flies in the face of the statute and case law. Huff and puff as defendants might, might does not make right and standing under the PMPA, as the act only gives the franchisee a preemptive right in the federal court.

It is also to be noted, that in the sublease, at Section 48. Governing Law; it reads: "This Sublease shall be construed under the and governed by the laws in the state in which the Premises is located." The defendants authored this sublease. Having written that they wish to be governed by the laws of Rhode Island, where the property is located, it is somewhat disingenuous on their part to now assert that they no longer wish to be governed by the laws of Rhode Island.

CONCLUSION

First of all, the defendants show no concrete federal jurisdiction and seek to "guild refined gold, to paint the lily, "[4] by saying in their petition for removal, that there is "apparent jurisdiction." Just as Hamlet's "apparent" vision claim of his deceased father's ghost did not create a reality, a claim of apparent jurisdiction, likewise, is not enough--there must be "real" jurisdiction.

Here, there is nothing in the complaint to show that this plaintiff is a franchisee. There is nothing in the sublease to show that this plaintiff is a franchisee. Plaintiff is a sub-tenant only. There is nothing in the complaint or the sublease to show that these defendants are franchisors—only that they are merely sublandlords under a master lease.

These defendants overreach with their combined claim that plaintiff is a franchisee and therefore, *ipse dixit,* they are franchisors, and as franchisors they come under the reach of PMPA; because plaintiff could, as franchisee, have commenced this action in federal court. This type of argument is without merit.

---

[4] Shakepeare's King John,, IV, ii 11,

These defendants should not even get to bat, since there is no franchise relationship to begin with. There is no resale distributorship of any petroleum, shown in the Exhibit A lease, in the removal records, to present that defendants are distributors authorizing the plaintiff to sell motor fuel under a trademark owned or controlled by the defendants, *Merlino v. Getty Petroleum Corp.*, 916 F.2d 52 (2nd Cir. 1990).

Discounting the trademark or logo requirement, then, or the above stated other reasons, plaintiff would request that this court deny the defendants' Removal Petition and remand this matter to the Providence Superior Court along with assessing defendants costs and counsel fees to be paid to plaintiff.

Plaintiff would also request that the time for answering the Counterclaim, which was filed with defendants' Answer to the Superior Court action, at the same time of the filing of their Removal Petition, not start until this court rules on plaintiff's Objection to the Removal Petition and his moving for a remand or, in the alternative, that the defendants' PMPA claim be dismissed by this court, for the reasons stated aforesaid.

DATED: At Cranston, Rhode Island this 14TH day of March, 2006.

Respectfully submitted,

*Edward John Mulligan*, RIB #0143
1220 Pontiac Avenue, Suite 303
Cranston, Rhode Island 02920
Tel (401) 944-5820
Fax (401) 944-5823
E-mail: ejmull @ cox. net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| QUICK RUN PETROLEUM, LLC<br>Plaintiff<br><br>vs.<br><br>MENDON ROAD LEASING CORP.;<br>HEMISPHERE MANAGEMENT CORPORATION;<br>DEMETRIOS HASEOTES<br>Defendants | CIVIL ACTION NO.: 06-104 S<br><br>CERTIFICATE OF SERVICE<br><br>(Providence Superior Court<br>No.: 06-0524) |

CERTIFICATION OF SERVICE

I hereby certify that I mailed a copy of the Notice of Special Appearance for the Purpose of Challenging Jurisdiction along with Plaintiff's Motion to Remand and Supporting Memorandum to defendants' counsel of record, Mark B. Morse, Esq., 111 Wayland Avenue, Providence, R.I. 02906, by United States Mail, first-class, postage prepaid, on this 14 7th day of March, 2006.

*Edward John Mulligan*, #0140
1220 Pontiac Avenue, Suite 303
Cranston, Rhode Island 02920
Tel: (4010944-5820 Fax 944-5823
e-mail; ejmull@cox.net

Attorney for Plaintiff