UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

QUICK RUN PETROLEUM, LLC,

VS: C.A. No.: 06-104S

MENDON ROAD LEASING CORP.,
HEMISPHERE MANAGEMENT
CORP., DEMETRIOS HASEOTES,

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

Now come the defendants and herein object to plaintiff's motion to remand the case to state court. In support, defendants allege that jurisdiction is proper in the federal court because the issues complained of arise under the Constitution, laws or treaties of the United States, andn thus present a federal question. In support of its objection, defendants attach a memorandum of law

Defendants,
Mendon Road Leasing Corp.,
Hemisphere Management Corp.,
*Demetrios Haseotes*,
By their attorneys

Mark B. Morse
LAW OFFICE OF MARK B. MORSE
111 Wayland Avenue
Providence, RI 02906
(401) 421-0555
fax: (401) 273-0937

## CERTIFICATION

To: Edward John Mulligan, Esq.
1220 Pontiac Avenue
Cranston, RI 02920

I hereby certify that I mailed a true copy of the within to the above-named attorney of record.

DATE: 3-20-06

John Martine

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

QUICK RUN PETROLEUM, LLC,

VS: C.A. No.: 06-104S

MENDON ROAD LEASING CORP., HEMISPHERE MANAGEMENT CORP., DEMETRIOS HASEOTES,

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

**FACTS AND TRAVEL**

Mendon Road Leasing Corp., Hemisphere Management Corp, and Demetrios Haseotes are the named defendants in an action commenced in the the Superior Court of the State of Rhode Island for Providence County, captioned *Quick Run Petroleum, LLC v. Mendon Road Leasing Corp., Hemisphere Management Corp., and Demetrios Haseotes*, Civil Action No. 06-0524 (the "state action"). In its complaint, Plaintiff alleges that on or about July 18, 2002, Quick Run Petroleum, LLC ("Quick Run") and Mendon Road Leasing Corp. ("Mendon Road") executed a sublease agreement in which Quick Run leased from Mendon Road certain premises for the purpose of operating a convenience store with gasoline. Defendants received a copy of Plaintiff's Complaint by certified mail on February 16, 2006. On March 7, 2006 Defendants answered the complaint, alleging affirmative defenses of, *inter alia*, failing to state a claim for which relief can be granted, and that the claims alleged are preempted by federal law. Defendants then filed its Motion to Remove to Federal Court on the basis that there exists an action arising under federal law; particularly 15 U.S.C. § 2801 *et seq*., The Petroleum Marketing Practices Act.

On March 14, 2006 plaintiff filed the within motion to remand to state court, and requested an extension of time in which to respond to the allegations of defendant's counterclaim.

Sorting through the hyperbole of Plaintiff's Memorandum, the focus of its argument appears to be that removal to federal court is improper because:

-by the four corners of plaintiff's complaint, exclusive state claims are alleged;

-plaintiff and defendants do not have a petroleum franchisor-franchisee relationship that would implicate the provisions of the Petroleum Marketing Practices Act, and

- The Petroleum Marketing Practices Act only protects the franchisee against predatory practices of the franchisor, therefore the franchisor has no right to rely on its provisions.

The focus of plaintiff's arguments are interrelated, and implicate the reach of the Petroleum Marketing Practices Act (PMPA), and the preemptive force of its provisions. For the reasons stated herein, Plaintiff's arguments are based on a misconstruction of applicable law, and its motion to remand should be denied.

**1. Plaintiff's Complaint Sets Forth Claims Arising Under the Petroleum Marketing Practices Act**

Plaintiff alleges that because it has pleaded its claims ostensibly under state law, the preemption provisions of the PMPA should not apply. *This is incorrect.*

The preemption provisions of the Petroleum Marketing Practices Act (PMPA) are found in 15 USC §2806 which, in pertinent part provide:

**(a) Termination or nonrenewal of franchise**

(1) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

The salient paragraphs of Plaintiff's Complaint allege that:

"On or about July 18, 2002 Quick Run and Mendon executed a Sublease Agreement in which Quick Run leased from Mendon certain premises located at Mendon Road, more specifically described as Assessor's Plat 58, Lots 54 and 123 ("demised premises') for the purpose of operating a convenience store with gasoline, including lottery, money order sales and Western Union services." (para. 5)

"On or about November 30, 2005 Mendon Road and/or Haseotes wrongfully, illegally, intentionally and willfully deprived Quick Run of possession of the demised premises." (para 6).

"On or about November 30, 2005 Mendon, Hemisphere and/or Haseotes wrongfully converted cash, inventory and other assets of Quick Run to their own use." (para 7).

As a result, plaintiff alleges a breach of contract (Count I); damages for self help eviction (Count II) and conversion of personal property (Count III). The substance of this complaint therefore is that the defendants wrongfully terminated the relationship it had with its sublessee through its alleged eviction and conversion of personal property[1] .

Plaintiff claims a right to have its complaint heard in state court because it is the "master

[1] The parties to the sublease agreement are Mendon Road Leasing Corp. and the named plaintiff. It is doubtful that any lawful claims can be maintained against the Defendants Hemisphere Management Corp., and Demetrios Haseotes.

of the claim," and may thereby avoid federal court jurisdiction by pleading state law claims. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). This argument overlooks the fundamental concept of preemption by federal legislation; that is when the federal law preempts the state law claim in a particular area, the state law claims are vanquished.

The "artful pleading" of a complaint couched under state law has been held not to defeat federal court jurisdiction when removed by the defendant. In *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW*, 132 F.3d 834 (1st Cir. 1997) the First Circuit Court addressed whether the federal preemption defense could withstand a "well pleaded complaint" that alleged claims only in state law. The *BIW* Court noted the basic premise that federal district courts have original jurisdiction over cases arising under the Constitution, laws or treaties of the United States, 28 USC §1331. *Id.* 132 F.3d at 831. Though federal court jurisdiction is generally prohibited if no federal claim appears within the four corners of the complaint, if the claims are within the realm of federal preemption, the federal court is empowered to look beneath the face of the complaint, and determine whether the plaintiff seeks to defeat removal by asserting a federal claim under the color of state law. *Id.* *citing* *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, (1981).

In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) the Court held that a complaint initially filed in state court, and alleging state claims, was removable to federal court because the allegations were preempted by federal law under the Employee Retirement Income Security Act of 1974 (ERISA). The *Metropolitan* Court held that even when the federal question is not obvious at the time the complaint was filed, the question of removal depends not on the obviousness of the whether the allegations are a federal question, but the intent of Congress to preempt the field by federal law. *Id.* at 66. The Court noted "If the claim appears to be federal

in nature--that is, if it meets the applicable test for one that arises under federal law--then the federal court must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims. *Id.* at 64. Thus, despite plaintiff's well pleaded complaint, the federal court should exercise its removal powers when the state claims fall within the rubric of federal question jurisdiction.

The underlying premise of Plaintiff's claim that state law applies is that the plaintiff and defendants do not have a franchisee/franchisor relationship under the PMPA. Plaintiff's argument is incorrect. The relationship is defined by the terms of the agreement by which defendant subleases property used to operate a convenience store with gasoline. As noted in 15 USC §2801 (1) **(B)** [t]he term "franchise" includes—

> **(i)** any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy;

In the instant matter, the premises in question were used as a gasoline filling station using trademarked petroleum products distributed by defendant Mendon Road Leasing Corp. to plaintiff. Contrary to plaintiff's allegations the sublease does specifically provide for the distribution of motor fuel. **See Exhibit A**: *Sublease Agreement at para. 41 attached to Defendant's Counterclaim.* Thus, by the terms of 15 USC §2801, the contract is a franchise agreement for the distribution of motor fuel, and falls within the parameters of the PMPA.

Plaintiff's claims are exclusively within the purview of the PMPA. Although the

PMPA does not preempt every state law regarding the relationship between the franchisor/franchisee, it does specifically control the type actions raised in plaintiff's complaint. The PMPA specifically preempts state law in actions pertaining to the grounds that a franchisor may elect to terminate its relationship with the franchisee. In the case of *Esso Standard Oil Company vs. Department of Consumer Affairs*, 793 F.2d 431 (1st Cir. 1986), the First Circuit held that a rent control statute enacted in Puerto Rico was not preempted by the PMPA. The *Esso* Court described the type state laws *not* preempted by the PMPA. The *Esso* Court cites two examples of state laws not preempted by the PMPA as:

(1) a Georgia statute forbidding franchisors from requiring a franchisee to operate more than six days per week or more than 12 hours per day was found not to be preempted by the PMPA in the case of *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008 (N.D.Ga.1979), *aff'd sub nom. Exxon Corp. v. Busbee*, 644 F.2d 1030 (5th Cir.1981), and

(2) a Connecticut law requiring all franchises to be for a minimum of three years, and if not properly terminated or nonrenewed, to be automatically renewed for three years was not preempted by the PMPA in the case of *Lasko v. Consumers Petroleum of Connecticut, Inc.*, 547 F.Supp. 211 (D.Conn.1981).

In both cases, the state law applied "to the duration, or one of the substantive terms of a franchise agreement, and not to the grounds for termination or nonrenewal, nor to the kinds of notice which a franchisor must afford a franchisee". *Esso Standard Oil Company* 793 F.2d at 435.

Contrast the allegations of plaintiff's complaint with the provisions of the PMPA, as

explained in *Esso Standard Oil Company*. In the instant matter, the plaintiff specifically alleges that the manner in which the franchisee was evicted was unlawful under state law. These allegations are exactly that which the PMPA was designed to govern.

Section 2802(a) of the PMPA states the general prohibition against termination of franchise contracts unless done under certain specified conditions. ("Except as provided in subsection (b) of this section and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—(1) terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise…"). There is no question that the actions complained of by plaintiff, are therefore within the parameters of the PMPA. *See also C.K. Smith & Co., Inc., v. Motiva Enterprises LLC,* 269 F.3d 70, 72 (1st Cir. 2001) (referring to a lease and gasoline sales agreement as falling within the contemplation of the PMPA).

**3. The Petroleum Marketing Practices Act Was Enacted to Govern the Relationship Between the Franchisor/Franchisee**

Plaintiff contends that the franchisor has no recourse under the PMPA. In support, plaintiff cites 15 USC §2805 which states in its enforcement provisions that a civil action can be maintained by a franchisee against the franchisor. The Fourth Circuit has held that a claim under the PMPA can be maintained only by the franchisee, *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 217 (4th Cir. 2001). The majority of courts have held otherwise.

As noted by the Court in *Texaco Refining and Marketing Inc. v. Davis,* 835 F.Supp. 1223, 1231 n.1 (D.Or. 1993) :

> While the PMPA does not expressly provide that the franchisor may bring suit, section 2805(a) does not contain language prohibiting the franchisor from maintaining a civil action against the franchisee. ...The wealth of authority is contrary. Courts in numerous other cases have recognized federal question jurisdiction in declaratory judgment actions filed by franchisors seeking a determination that they properly terminated a franchisee under the PMPA. *(citations referenced in n.1 omitted).*

The First Circuit has not explicitly decided the issue of whether a franchisor can maintain a civil enforcement claim under the PMPA. Nonetheless, in the First Circuit, the district courts generally allow maintenance of a claim brought by a franchisor under the PMPA. *See eg: Esso Standard Oil Co. v. Zayas,* 352 F.Supp.2d 165 (D.P.R. 2005); *Mobil Oil Corp. v. Vachon,* 580 F.Supp. 153 (D.Mass.1983). *Contra: CIA. Petrolera Caribe, Inc. v. De Jesus*, 671 F.Supp. 884 (D.P.R.1987). In *Esso Standard v,. Zayas*, the court ruled that subject matter jurisdiction was proper under the PMPA because the claims were exclusively governed by federal law. The *Esso Standard v. Zayas* does note that the issue of whether a franchisor can maintain a claim against a franchisee is not yet decided by the First Circuit Court of Appeals, *Id* at 168. In finding that subject matter jurisdiction existed in its case, the *Esso/ Zayas* Court reasoned that had the defendant franchisee brought suit based on the allegations raised by the plaintiff franchisor, the claim would have had to arise in federal court, *Id.* at 168. Accordingly, federal court subject matter jurisdiction was proper under the PMPA. *Id.*

In a different case involving Esso, the Court in *Esso Standard Oil Company vs. Department of Consumer Affairs*, 793 F.2d 431, 434 (1st Cir. 1986) stated that although

> [t]he primary objective of the PMPA was to protect franchisees from arbitrary and discriminatory terminations. 1978 U.S.Code Cong. & Ad.News at 873-77. Nevertheless, there is no doubt that Congress was also concerned with

> retaining some flexibility for franchisors. As the Senate Report accompanying the bill pointed out: "Legislation in this subject area requires recognition of the legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship based upon certain actions of the franchisee, including certain failures to comply with contractual obligations or upon certain changes in circumstances." 1978 U.S.Code Cong. & Ad.News at 877.

The reported cases of a franchisor bringing a claim against the franchisee are abundant. *See eg*: *Chevron, U.S.A., Inc. v. Mebtah*, 148 F.Supp.2d 1019 (C.D.Cal.,2000) (claim brought by franchisor that franchisee violated terms of marketing agreement); *Shell Oil Co. v. Altina Associates, Inc*., 866 F.Supp. 536 (M.D.Fla.,1994) (franchisor brought action against franchisees to terminate franchise contract); *Shell Oil Co. v. Wentworth*, 822 F.Supp. 878 (D.Conn.,1993) (oil company franchisor brought action to terminate franchise contract). *See also* cases cited in *Texaco Refining and Marketing Inc. v. Davis*, 835 F.Supp. 1223, 1231 n.1 (D.Or. 1993). For these reasons, the Court should allow the within claim against the plaintiff, and not remand the case to state court.

## CONCLUSION

Plaintiff's complaint state claims arising under The Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq*., which are preempted under federal law. When an area of the law is preempted, the Court can look beyond the well pleaded complaint to determine if the issues raised are those arising as a federal question. The complaint has therefore been properly removed to federal court. Plaintiff's motion to remand should be denied.

**Defendants,**
**Mendon Road Leasing Corp.,**
Hemisphere Management Corp.,
Demetrios Haseotes,
By their attorney,

Mark B. Morse
LAW OFFICE OF MARK B. MORSE
111 Wayland Avenue
Providence, RI 02906
(401) 421-0555
fax: (401) 273-0937

**CERTIFICATION**

To: Edward John Mulligan, Esq.
1220 Pontiac Avenue
Cranston, RI 02920

I hereby certify that I mailed a true copy of the within to the above-named attorney of record.

DATE: 3-20-06

John Martini